**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**MIDDLE DIVISION**

| | |
|---|---|
| **LINDA SHAKEEL,** *as wife of Raasheem Khalfani Aarif Shakeel, the deceased wage earner*, )<br>)<br>)<br>)<br>**Plaintiff,** )<br>)<br>**v.** )<br>)<br>**NANCY A. BERRYHILL, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,** )<br>)<br>)<br>)<br>**Defendant**. ) | Case No.: 4:17-CV-208-VEH |

## MEMORANDUM OPINION

**I.  INTRODUCTION**

Plaintiff Linda Shakeel brings this action under 42 U.S.C. § 405(g) on behalf of her now-deceased husband, Raasheem Khalfani Aarif Shakeel ("Shakeel"). Linda Shakeel seeks a review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied her husband's application for disability insurance benefits ("DIB"). Mr. and Ms. Shakeel exhausted the administrative remedies available before the Commissioner. This case is now ripe for judicial review under section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g).

The Court carefully reviewed the record in this case and **REVERSES** and **REMANDS** the ALJ's decision.

## II.   RELEVANT BACKGROUND

The alleged onset date is September 7, 2012. (Tr. 12). Mr. Shakeel suffered from the severe impairments of "cervical degenerative disc disease and coronary artery disease." (*Id.* at 14) (emphasis omitted). On June 14, 2013, Mr. Shakeel filed an application for Social Security benefits. (*Id.* at 12). The Social Security Administration denied that application on September 10, 2013. (*Id.*). Unfortunately, Mr. Shakeel passed away on September 18, 2013. (*Id.*). On January 26, 2015, Administrative Law Judge Cynthia G. Weaver held a hearing. (*Id.* at 12, 21). The ALJ issued her decision on August 21, 2015, which was unfavorable to Ms. Shakeel. (*Id.* at 21). In that opinion, the ALJ found that Mr. Shakeel did not meet the disability standard at Steps Three and Five. (*Id.* at 15, 20). Ms. Shakeel requested the Appeals Council review the claim. (*Id.* at 1-3). They refused. (*Id.*).

## III.   STANDARDS

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219,

1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court.

The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act

3

and the Regulations promulgated thereunder.[1] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];

(4) whether the claimant can perform his or her past work; and

(5) whether the claimant is capable of performing any work in the

---

[1] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## V.   FINDING OF THE ADMINISTRATIVE LAW JUDGE

After considering the record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2. The claimant has not engaged in substantial gainful activity since September 7, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: cervical degenerative disc disease and coronary artery disease (20 CFR 404.1520(c)).

5

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except occasional postural maneuvers, no climbing of ladders, ropes, or scaffolds, frequent front and lateral reaching with bilateral upper extremities, no overhead reaching with bilateral upper extremities, avoid exposure to dangerous moving, unguarded machinery, and unprotected heights, and avoid potential violent altercation situations.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on [REDACTED] and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the

>Social Security Act, from September 7, 2012, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 14-21) (emphasis omitted).

## VI. ANALYSIS

The first issue is whether "[t]he ALJ failed to accord proper weight to the treating physician, Dr. Anjanetta Foster . . . and failed to show good cause for rejecting said opinion." (Doc. 9 at 2).

Before addressing that question, the Court will quickly review the governing law:

> "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Absent "good cause," an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight." *Lewis*, 125 F.3d at 1440; see also 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2). Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241. With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate [the] reasons" for doing so. *Id.* at 1240–41.
>
> Moreover, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir.1987) (per curiam). "In the absence of such a statement, it is impossible for a reviewing court to determine

7

> whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981). Therefore, when the ALJ fails to "state with at least some measure of clarity the grounds for his decision," we will decline to affirm "simply because some rationale might have supported the ALJ's conclusion." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir.1984) (per curiam). In such a situation, "to say that [the ALJ's] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Cowart*, 662 F.2d at 735 (quoting *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir.1979)) (internal quotation marks omitted).

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). "[W]thout clearly articulated grounds for such a rejection, [a court] cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence." *Id.* at 1179. However, "[a]n error is harmless if it does not affect the ALJ's ultimate decision." *Colon v. Colvin*, 660 F. App'x 867, 869 (11th Cir. 2016) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)) (applying the harmless error doctrine when the "ALJ erred in not stating the particular weight that was given to Dr. Pothiawala's findings regarding his mental limitations and in not mentioning the findings of Dr. Keven and Dr. Marino").

Shakeel argues that "[t]he ALJ failed to acknowledge the diagnosis and opinion and impliedly rejected the opinion of the treating physician." (Doc. 9 at 20). Shakeel writes that the only mention of medical records from this source ignores the doctor's

opinions. (*See id.*). Shakeel cites numerous cases that recite the general law of Social Security appellate review. (*See id.* at 21-26).

The Commissioner responds by conceding that the ALJ "did not specifically note Dr. Foster's diagnoses or her finding of severe spinal pain on one occasion." (*See* Doc. 10 at 7).[2] The ALJ's failure to address Dr. Foster's spinal findings and assign the appropriate weight to them was error. Now, the Court must determine whether that error was harmless.

The Commissioner believes that it "represents harmless error as the ALJ provided specific reasons for according controlling weight to the opinions from [Shakeel's] other treating and examining specialists that were inconsistent with Dr. Foster's finding of severe spinal pain in April of 2013." (Doc. 10 at 7) (citing Tr. 17-19, 411-12, 427, 505). However, because these medical records are inconsistent with Dr. Foster's opinion is the very reason why the ALJ needed to explain crediting one doctor over another. The court in *Colon* applied the harmless error doctrine when " those medical opinions were consistent with the ALJ's conclusion." *See Colon*, 660 F. App'x at 870. Here, the medical records are inconsistent because Dr. Foster opined

---

[2] The Court points out that the ALJ did not note the "severe pain" in Mr. Shakeel's spine that was recorded on April 26, 2013. (Tr. 520-21). Additionally, the ALJ did not make it clear that she considered that, on July 12, 2013, Mr. Shakeel's spinal stenosis was described as "uncontrolled." (*Id.* at 522-24).

9

that Mr. Shakeel's back pain was "uncontrolled" and there was "severe pain [with] motion," yet the ALJ found that he could do light work with limitations. (Tr. 15, 519-520).

In support of the harmless error argument, the Commissioner argues that Dr. Foster was inconsistent. (Doc. 10 at 8) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004)). The Commissioner stated:

> Additionally, Dr. Foster's finding on her initial examination of severe spinal pain on motion (Tr. 520) is inconsistent with July 2013 finding of "normal range of motion, muscle strength, and stability in all extremities with no pain on inspection" (Tr. 523). See Phillips, 357 F.3d at 1240-41.

(Doc. 10 at 8). However, Dr. Foster also noted Mr. Shakeel's spinal stenosis as "[u]ncontrolled" on the July 2013 record. (Tr. 524). Further, it is commonly understood that the spine is not an extremity (arms and legs are extremities). *See Extremity*, ATTORNEY'S DICTIONARY OF MEDICINE (2017) (defining "extremity").

Additionally, the Commissioner notes that Dr. Foster "only examined [Mr. Shakeel] twice" and therefore "may not be a treating physician." (*Id.*). The Commissioner relies on the Eleventh Circuit's decision in *Coheley*. (*See id.* at 8) (citing *Coheley v. Comm'r of Soc. Sec.*, 707 F. App'x 656 (11th Cir. 2017)). There, the Court stated that "because Dr. Wilson examined Claimant only twice, he was no treating physician; and his opinion is unentitled to deference." *See Coheley*, 707 F.

App'x at 659 (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)).[3]

This Court is not persuaded that *Coheley* mandates a finding that Dr. Foster was not a treating physician, as the Commissioner argues. (*See* Doc. 10 at 7-8). First, the records appear to show that Dr. Foster actually treated Mr. Shakeel, even if only twice. (Tr. 519-29) (completing a physical exam). Second, the court in *McClurkin* made it clear that "the explanation requirement applies equally to the opinions of treating physicians and non-treating physicians." *See McClurkin*, 625 F. App'x at 962 (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)). Further, on both occasions, Dr. Foster ordered a follow-up visit with Mr. Shakeel. (Tr. 521, 524). Both were for two-month follow-ups. (*See id.*). Two months after July 12, 2013, would have been right around the time that Mr. Shakeel, unfortunately, passed away. (Tr. 12, 524).[4] Though Dr. Foster may not have seen Mr. Shakeel over a long period of time, it appears that this was potentially the start of a long-standing doctor-patient treatment cut short by Mr. Shakeel's death. This is not to say that Dr. Foster's opinion should be given the weight of a long-time treating physician, as she only saw Mr. Shakeel twice. However, the ALJ needs to explain her thought process in

---

[3] The court in *McSwain* stated that " their opinions are not entitled to deference because as one-time examiners they were not treating physicians." *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (citing *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir.1986)).

[4] According to Mr. Shakeel's death certificate, the immediate cause of death was a "[c]ardiopulmonary [r]espiratory [a]rrest." (Tr. 131).

addressing Dr. Foster's treatment records, especially when those records do not fully comport with her conclusion. *Cf. Baker v. Berryhill*, No. 6:16-CV-1951-VEH, 2018 WL 949245, *4 (N.D. Ala. Feb. 20, 2018) (Hopkins, J.) (citing sources) (discussing the need for ALJ's to discuss the evidence in a case).

Having found error, and being unconvinced that this error was harmless, the Court **REVERSES** and **REMANDS** the case back to the Commissioner for further consideration of Dr. Foster's opinion, consistent with controlling law and Eleventh Circuit precedent. Having remanded on the first argument, the Court declines to address Shakeel's four other arguments.

### VII. CONCLUSION

The Court declines to state that Mr. Shakeel was disabled. Indeed on remand, the Commissioner might determine that the prior ruling was correct, even after taking into account Dr. Foster's opinion. However, given the lack of discussion surrounding Dr. Foster's opinion (and how it fits into the case), the Court cannot be confident that the ALJ has properly considered all the evidence. For that reason, the decision of the Commissioner is due to be, and hereby is, **REVERSED** and **REMANDED** for further proceedings consistent with today's opinion.

**DONE** and **ORDERED** this the 18th day of April, 2018.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge